UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RENE E. STERLING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:13-cv-01132-SEB-DKL |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Rene E. Sterling ("Sterling") requests judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"), denying Sterling's application for supplemental security income ("SSI"). The Honorable Sarah Evans Barker, District Judge, designated this Magistrate Judge, under Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1), to issue a report and recommendation on the request. [Dkt. 9.] For the reasons set forth below, the undersigned recommends the Commissioner=s decision be **REVERSED** and **REMANDED**.

### I. BACKGROUND

**A. Procedural History**

Sterling filed an application for SSI on August 21, 2009, alleging an onset of disability of June 21, 2002. [Dkt. 14-2 at 12.] Sterling's application was denied initially

1

on February 15, 2010, and upon reconsideration on March 17, 2010. *Id.* Sterling requested a hearing, which was held on October 19, 2011 and February 8, 2012, before Administrative Law Judge Mark C. Ziercher ("ALJ"). The ALJ denied Sterling's application on May 24, 2012. [Dkt. 14-2 at 9.] The Appeals Council denied Sterling's request for review of the ALJ's decision on July 2, 2013, making the ALJ's decision final for purposes of judicial review. [Dkt. 14-2 at 2.] Sterling filed her Complaint with this Court on July 15, 2013. [Dkt. 1.]

### B. Factual Background and Medical History

Sterling was born on October 5, 1958, and was 54 years old at the time of the hearing. She has no past relevant work. Sterling previously received SSI; however, benefits were discontinued in 2006 after she received a small inheritance. The ALJ found Sterling suffers from the severe impairments of chronic back pain, severe left-sided hearing loss and anxiety disorder. As Sterling and the ALJ thoroughly summarized the medical records, the Court will only cite to the portions relevant to the issues on which Sterling requests review.

## II. LEGAL STANDARDS

### A. Standard for Proving Disability

To be eligible for SSI and DIB, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> Step One: Is the claimant currently employed;
>
> Step Two: Does the claimant have a severe impairment or combination of impairments;
>
> Step Three: Does the claimant's impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;
>
> Step Four: Can the claimant perform his past relevant work; and
>
> Step Five: Is the claimant capable of performing any work in the national economy?

20 C.F.R. §§ 404.1520. *See also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the SSA has the burden at Step Five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity. 20 C.F.R. § 404.1560 (c)(2).

### B. Standard for Judicial Review

An ALJ=s decision will be upheld so long as the ALJ applied the correct legal standard, and substantial evidence supported the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation

omitted). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th 2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *O-Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citation omitted).

### III. <u>DISCUSSION</u>

Sterling initially raises two issues on appeal concerning the ALJ's RFC assessment. In her Reply brief, Sterling withdrew one issue and focused on a rather novel, yet persuasive, argument. The ALJ found Sterling has moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence and/or pace. Yet, the RFC assessment contained this sentence: "She can

4

perform productive work tasks for up to an average of 96 to 100% of an 8-hour workday, not including the typical morning, lunch and afternoon breaks." [Dkt. 14-2 at 18.] Sterling argues these findings are inconsistent. Specifically, Sterling asserts that a person with "moderate" difficulties in concentration, persistence and/or pace cannot also be productive for 96 to 100 percent of the workday. Although neither the Social Security Act nor the regulations quantify the term "moderate," Sterling cites caselaw supporting the notion that a moderate deficiency equates to a 10 to 40 percent reduction in "normal" work performance. For example, in *Broder v. Commissioner of Social Security*, 2012 WL 529944 (E.D. Mich.), the ALJ noted that claimant's moderate difficulty in social functioning equated to a 10-20 percent deficit. Similarly, in *Day v. Astrue*, 2012 WL 13713 (W.D. Wash.), the vocational expert testified at the claimant's hearing that it would be reasonable to define the term "moderate" to mean, "impacting an individual 20 percent of the time." It is reasonable to assume that Sterling's moderate limitations translate into a decrease in productivity; but the ALJ's opinion fails to quantify, or even address, this issue.

Following the briefing in this case, another court in this district encountered a similar issue in *Lobbes v. Colvin*, 2014 WL 1607617. As in this case, the ALJ in *Lobbes* found Lobbes had moderate difficulties in concentration, persistence and pace yet also found she could remain on task for 95% of her workday. The Court noted that the ALJ failed to explain why he equated the facts to a five-percent reduction as opposed to any other number. "The ALJ's failure to connect his findings to his chosen number is

5

particularly disconcerting because . . . the figure he discarded would have meant disability according to the VE's testimony." *Lobbes*, 2014 WL at *19.

At Sterling's hearing, the VE testified that if an individual were only able to perform productive work tasks for 86 to 90 percent of a work day, all potential jobs would be eliminated. In other words, even a 10 percent reduction in productivity would render an individual disabled according to the VE. But the ALJ *did not* ask the VE how Sterling's moderate difficulties with social functioning and concentration, persistence and/or pace impacts her productivity. The ALJ also did not quantify Sterling's moderate limitations with a specific reduction in productivity. Based on those failures, it appears the ALJ simply assigned the "96-100%" number to be consistent with the VE's testimony as to the acceptable level of productivity for a non-disabled individual. The Court agrees with Sterling that it is inconsistent to determine she has these moderate limitations, yet also determine without explanation that she is able to stay on-task for 96-100% of the workday. The logical bridge here is not sound. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("[W]e will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review").

If the ALJ believed Sterling's moderate limitations would not significantly impact her productivity, he needed to articulate why. Without such explanation, his decision is not supported by substantial evidence.

## IV. Conclusion

The undersigned Magistrate Judge recommends the ALJ's decision be reversed primarily because he failed to properly obtain and evaluate the evidence. It is the job of the ALJ, not the court, to weigh the evidence, resolve conflicts, and determine whether the claimant is disabled. *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1037 (E.D. Wis. 2004). Therefore, the Magistrate recommends the Commissioner's decision be **REVERSED** and **REMANDED** with instructions to re-evaluate his RFC and disability determination in light of his finding that Sterling has moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence and/or pace.

## Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**The parties should not expect extensions of time to file either objections or responses. No replies will be allowed.**

**DONE this date**: 07/24/2014

_Denise K. LaRue_
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Timothy J. Vrana
tim@timvrana.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov